UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY WILLIAMS,

                Plaintiff,               CIVIL ACTION NO. 04-CV-73139-DT

     vs.

                                  DISTRICT JUDGE PAUL D. BORMAN

COMMISSIONER OF
SOCIAL SECURITY,             MAGISTRATE JUDGE MONA K. MAJZOUB
            Defendant.
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** This Court recommends that Defendant's Motion For Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision of the Commissioner of Social Security that the Plaintiff was not entitled to Disability Insurance Benefits under the Social Security Act, 42 U.S.C. §§ 416(i), 423. The issue for review is whether the Commissioner's decision that the Plaintiff is not disabled was properly supported.

Plaintiff Nancy Williams filed an application for Disability Insurance Benefits (DIB) on August 10, 2001. (Tr. 45). She alleged she had been disabled since February 27, 2001. *Id.* On January 17, 2002, Plaintiff's claims were denied. (Tr. 30). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and received a hearing before ALJ Douglas N. Jones on November 18, 2003. (Tr. 248). The ALJ issued a written opinion finding that Plaintiff was not disabled on November 25, 2003. (Tr. 17). Plaintiff filed a request for review of the ALJ's opinion before the Appeals Council. (Tr. 12). The Appeals Council denied review on July 12, 2004. (Tr. 10). The ALJ's written opinion now stands as Defendant's final decision on Plaintiff's claim. *See* 20 C.F.R. §§ 404.955, 404.981.

## MEDICAL HISTORY

Plaintiff was born on July 13, 1950. (TR. 253). At the time of the hearing, she stood 5' 2" tall and weighed 235 pounds. *Id.* On July 7, 1999, Bong Jung M.D. performed an EMG examination on Plaintiff's wrists. (Tr. 121). The EMG indicated moderate median nerve dysfunction of the right wrist, suggestive of carpal tunnel syndrome. *Id.* On February 1, 2001, Plaintiff underwent a cardiac stress test. (Tr. 122). Plaintiff's blood pressure ranged from 120/74 to 164/80 during the test, and the overall results were consistent with sclerotic heart disease. (Tr. 122). Michael E. Gruber performed an ultrasound examination of Plaintiff's carotid arteries on February 19, 2001. (Tr. 123). Dr. Gruder found some plaque formation but normal blood flow. *Id.* On February 27, 2001, Prakash Malkani, M.D. took an MRI of Plaintiff's cervical spine. (Tr. 149).

Sachin Nagarkar, M.D., a psychiatrist, consulted with Plaintiff on several occasions between August, 2001 and February, 2003. (Tr. 226-231). On March 28, 2001, Dr. Nagarkar opined that Plaintiff was suffering from a single episode of major depression and placed Plaintiff on the antidepressant Celexa. (Tr. 232). On July 12, 2001, Jeffrey Levin, M.D. examined Plaintiff's wrists and shoulders. (Tr. 152). Plaintiff showed mild weakness in her left biceps and triceps, a positive Phalen's sign on each wrist, thenar weakness, and limited range of abduction in her left shoulder. (Tr. 152). Dr. Levin opined that Plaintiff had bilateral carpal and cubital tunnel syndromes, left rotator cuff pathology, lumbar radiculopathy at the L5-S1 level, and cervical radiculopathy at the C6-7 level. (Tr. 153). Anthony deBari, M.D. examined Plaintiff on August 7, 2001. (Tr. 208). Plaintiff had a full range of motion with some pain in her shoulders and wrists, and positive Tinel's and Phalen's signs in her wrists. *Id.* Dr. de Bari concluded that Plaintiff had mild carpal tunnel syndrome and a partial rotator cuff tear in the left shoulder. (Tr. 208). He advised that Plaintiff undergo physical therapy and be monitored for

-2-

improvement but did not recommend surgery.  *Id.*  EMG of Plaintiff's spine and wrists performed on August 23, 2001 showed bilateral carpal tunnel syndrome and radiculopathies at the L5-S1 and C6-7 levels.  (Tr. 151).

John R. Bartone, M.D. performed a residual functional capacity assessment of Plaintiff on October 30, 2001.  (Tr. 155).  Dr. Bartone concluded that Plaintiff retained the functional capacity to do a reduced range of light work.  (Tr. 155-156).  Bruce G. Douglass, Ph.D. performed a psychiatric review of Plaintiff on November 6, 2001.  (Tr. 165-178).  He concluded that Plaintiff suffered no severe mental disorder.  *Id.*

On February 13, 2003, Dr. de Bari performed an acromioplasty and rotator cuff repair on Plaintiff's left shoulder.  (Tr. 204).  Plaintiff had a nearly normal range of left-shoulder motion by May 22, 2002, and underwent a course of physical therapy to improve her shoulder strength.  (Tr. 202).

## HEARING TESTIMONY

Plaintiff testified before ALJ Douglas N. Jones on November 18, 2003.  (Tr. 248).  Plaintiff testified concerning her physical difficulties, job history, and daily activities.  She testified that she was able to do light housework and bowled up to two times a month.  (Tr. 265).  Plaintiff also testified that she her left shoulder continued to trouble her while reaching in front, but that reaching overhead was "not too bad."  (Tr. 270).

Stephanee Leech, a vocational expert, examined Plaintiff concerning her past work as a fabric cutter and dietary clerk.  (Tr. 277).  Plaintiff testified that her work as a dietary clerk involved entering data into a computer for approximately one half hour per day.  (Tr. 279).  The vocational expert testified that Plaintiff's past work as a fabric cutter was light uskilled work, and that her past work as a dietary clerk involved only basic computer operation.  (Tr. 280).

The ALJ asked the vocational expert to provide testimony about the availability of work for a hypothetical person of Plaintiff's age, work history and educational history who was subject to certain physical limitations. (Tr. 283). Specifically, she was asked to assume the hypothetical person could perform light work involving only occasional bending at the waist, bending at the knees, kneeling, climbing of stairs, reaching forward with the non-dominant (left) arm, or reaching overhead with the non-dominant arm, and no crawling, climbing ladders, use of vibrating hand tools, forceful or sustained gripping or gasping, or constant repetitive wrist movements. (Tr. 283). The vocational expert testified that such a hypothetical person would be able to perform Plaintiff's past work as a dietary clerk as well as several thousand unskilled jobs in the regional economy. (Tr. 286).

## THE ALJ'S OPINION

In his November 25, 2003 written opinion, the ALJ concluded that Plaintiff was not disabled. After reviewing the record, the ALJ found that Plaintiff had a severe impairment that did not meet or medically equal a listed impairment, that Plaintiff's testimony was not entirely credible, and that Plaintiff retained the functional capacity to do light work that involved carrying no more than 15 pounds, with frequent but not constant forward or overhead reaching, only occasional bending at the waist, bending at the knees, kneeling, or climbing of stairs, and no crawling, climbing of ladders, or forceful or sustained gripping or grasping. (Tr. 23). The ALJ concluded that, given Plaintiff's age, education, vocational skills, and functional capacity, there were jobs available to her in the regional economy. *Id.*

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S.

-4-

389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## DISCUSSION AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1)     she was not presently engaged in substantial gainful employment; and

(2)     she suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     she did not have the residual functional capacity (RFC) to perform her relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented her from doing her past work, the Commissioner would, at step five, consider her RFC, age, education and past work experience to determine if she could perform other work. If she cannot, she would be deemed

-5-

disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

The ALJ concluded at step three that Plaintiff's impairments were not medically equal to a listed severe impairment. At step four, the ALJ found that Plaintiff was not disabled because she was able to perform some of her past work. The ALJ went on to make a step five finding that Plaintiff was able to perform other work in the economy. Because either the step four or the step five finding is sufficient to support the ALJ's determination that Plaintiff is not disabled, Plaintiff is not entitled to relief unless neither finding was supported by substantial evidence on the record.

Plaintiff argues that there are two errors in the ALJ's step five finding. First, Plaintiff argues that the ALJ erroneously concluded that Plaintiff had transferable computer skills. In determining that Plaintiff had transferable computer skills, the ALJ relied on the vocational expert's examination of Plaintiff concerning her computer skills. (Tr. 278-280). In light of Plaintiff's computer education and past work involving computer use, the vocational expert concluded that Plaintiff had some transferable computer skills. (Tr. 284-5). The opinion of a vocational expert on vocational matters is substantial evidence upon which the ALJ may properly rely in reaching his disability determination. 20 C.F.R. § 404.1566(e).

-6-

Second, Plaintiff argues that the ALJ failed to properly incorporate physical limitations associated with Plaintiff's cervical radiculopathy into Plaintiff's RFC. Plaintiff points first to a report from Dr. Levin documenting Plaintiff's cervical radiculopathy and advising that Plaintiff do no heavy lifting. (Tr. 152-53). At the administrative hearing, Plaintiff testified that her neck condition prevents her from pulling, pushing, or lifting more than five pounds. (Tr. 255). The ALJ concluded that Plaintiff was restricted to no forceful or sustained gripping or grasping, and no more than frequent overhead or forward reaching. (Tr. 21). Plaintiff argues that the ALJ was required to include this five pounds limitation in her RFC. Plaintiff's testimony as to this limitation was inconsistent with the objective medical evidence, the absence of aggresive treatment, and Plaintiff's daily activities. (Tr. 21). Dr. Levin only restricted Plaintiff from heavy lifting, and he did not recommend that Plaintiff undergo aggressive treatment. In addition, Plaintiff testified at the administrative hearing that she continued to do yardwork and that she went bowling up to twice a month. Substantial evidence supports the ALJ's conclusion that Plaintiff was able to lift up to fifteen pounds at a time with limitations on gripping, grasping, and reaching.

At the administrative hearing, the vocational expert identified more than ten thousand positions in the regional economy available to a person with Plaintiff's education, skills, and RFC. The ALJ properly relied on the vocational expert's testimony to conclude, at step five, that Plaintiff was not disabled. Any flaws in the ALJ's evaluation of Plaintiff at step four are immaterial, because the ALJ's step five finding is sufficient to support the ALJ's determination that Plaintiff was not disabled.

## RECOMMENDATION

The Commisioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment should be DENIED, and. Defendant's Motion for Summary Judgment should be GRANTED.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: June 23, 2005                          s/ Mona K. Majzoub
                                              MONA K. MAJZOUB
                                              UNITED STATES MAGISTRATE JUDGE


## Proof of Service

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 23, 2005                          s/ Lisa C. Bartlett
                                              Courtroom Deputy